UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GERALD BUSHNELL, ET AL.** | : | **CIVIL ACTION NO. 2:17-cv-1146** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **ARNOLD NATALI, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court are a Motion to Dismiss and Motion for Summary Judgment [doc. 27] filed by defendants Arnold Natali, Holly Trosclair, and Faye Miller; and a Motion for Summary Judgment [doc. 41] filed by plaintiffs Gerald Bushnell and Dolores Bushnell. Both matters are opposed and have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

## I.
### BACKGROUND

The above motions relate to a suit filed in this court by plaintiffs, a mother and son, under the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3601 *et seq.*[1] Plaintiffs allege that defendants violated the FHAA by refusing to allow them to jointly enter into a lease for their apartment in Jennings, Louisiana, either because of Gerald Bushnell's mental illness or as a reasonable accommodation for Dolores Bushnell's cancer. Doc. 1, p. 1.

---

[1] The FHAA was passed in 1988 as amendments to the Fair Housing Act ("FHA") of 1968, to extend the latter's protections to include people with disabilities. *See* 42 U.S.C. §§ 3602(h), 3604.

-1-

Specifically, plaintiffs assert: Gerald Bushnell, who is diagnosed with schizophrenia and under treatment for that condition with a physician, has resided at the apartment with his mother, Dolores,[2] since April 1994. *Id.* at 3. At that time Dolores signed a six-month lease, which listed Gerald Bushnell as an occupant. *Id.* The lease was only valid until October 1994 and reconducted upon its expiration, when the Bushnells remained in the apartment. *Id.* In November 2016 Dolores requested that Gerald be added to the lease as co-lessee because she had been diagnosed with cancer. *Id.* at 4. She was ultimately informed that her request would be denied because of a fear that Gerald would not take his medication after Dolores died, despite the fact that he had been medication-compliant for over 20 years and has not breached a single term of the lease in the years he has occupied the apartment. *Id.* at 4–5.

The Bushnells filed suit in this court on September 11, 2017, alleging that defendants violated federal law by refusing to allow Gerald to be on the lease as a reasonable accommodation for Dolores's cancer or by refusing to lease to him in his own right because of his schizophrenia.[3] Accordingly, they seek (1) a declaration that defendants' actions amounted to a violation of the FHAA and (2) a permanent injunction "to prevent any further discrimination by Defendants." *Id.* at 9. *Id.* at 9.

Defendants then moved to dismiss the suit or, alternatively, for summary judgment. Doc. 27. They asserted that Dolores's request to add Gerald as a co-lessee was not a reasonable accommodation, and that plaintiffs therefore could not establish an FHA violation. Doc. 27, att. 2. The court decided to treat the motion as one for summary judgment and allow additional time for the parties to conduct discovery and supplement their briefs. Doc. 38. Plaintiffs then filed their

---

[2] Because of their shared last names, the court refers to plaintiffs individually by their first names. No disrespect is intended by the references.
[3] They also initially sought monetary damages and raised a claim of retaliation but have since stipulated to dismissal of same. *See* docs. 40, 43.

own motion for summary judgment, alleging that record evidence supports both of their claimed FHAA violations. Doc. 41. Both motions are opposed and are now ripe for review.

## II.
### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### APPLICATION

The Bushnells allege that defendants have violated Sections 3604(f)(1)–(3) of the FHAA through their handling of Gerald Bushnell's request to be added to the lease.[4] These provisions forbid discrimination in the sale or rental of a dwelling to a buyer or renter or discrimination against any person in the terms of such a sale or rental "because of a handicap of— (A) that buyer or renter, (B) a person residing in or intending to reside in the dwelling . . . or (C) any person associated with that buyer or renter."[5] 42 U.S.C. § 3604(f)(1)–(2). Such discrimination includes intentional discrimination as well as "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* at § 3604(f)(3)(B).

A plaintiff may prove intentional discrimination under the FHAA either directly or "through the inferential burden shifting method known as the *McDonnell Douglas* test."[6] *Kormoczy v. HUD*, 53 F.3d 821, 823–24 (7th Cir. 1995) (citing *McDonnell Douglas Corp. v. Green*, 93 S.Ct. 1817 (1973)); *accord Texas v. Crest Asset Mgmt., Inc.*, 85 F.Supp.2d 722, 728

---

[4] In their motion for summary judgment the plaintiffs also appear to allege a violation of §3604(c) based on defendants' statements indicating a preference, limitation, or discrimination against a disability. Doc. 41, att. 2, pp. 5–6. No such claim was raised in the pleadings and so we do not consider it to be at issue in this matter.

[5] The FHAA uses the term "handicap," but the term is "functionally synonymous" with the term "disability" as used under the ADA. *Evergreen Presbyterian Ministries, Inc. v. Town of Haughton*, 2016 WL 4133587, at *4 n. 3 (W.D. La. Aug. 3, 2016) (citing *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 38 n. 8 (2d Cir. 2015)). The court follows plaintiffs' preference for this opinion and uses the term "disability."

[6] Under this framework, a plaintiff must show in the FHA/FHAA context that (i) he belongs to a protected class, (ii) he sought to rent or buy housing protected by the FHAA, and (iii) despite qualifying for such housing, he was rejected. *Lindsay v. Yates*, 578 F.3d 407, 415–16 (6th Cir. 2009) (applying *McDonnell Douglas* to an FHA racial discrimination claim). If the plaintiff makes this showing, a burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions – though it need not prove that it was actually motivated by that reason. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). It is then the plaintiff's burden to show that this reason was instead a pretext for discrimination. *Id.* at 315–16.

(S.D. Tex. 2000). The *McDonnell Douglas* is only used, however, in cases where the plaintiff lacks direct evidence of discrimination. *Allain v. Bd. of Supervisors Univ. of La. Sys.*, 81 F.Supp.3d 502, 509 (W.D. La. 2015) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097 (2000)). If the plaintiff produces such evidence, a burden of persuasion rather than production shifts to the defendant. *Crest Asset Mgmt.*, 85 F.Supp.2d at 729–30 (citing *Price Waterhouse v. Hopkins*, 109 S.Ct. 1775 (1989)). In other words, the defendant must show that the same adverse housing decision would have been made regardless of his discriminatory intent. *Id.* A defendant's remarks may constitute direct evidence of discrimination, so long as they are (1) related to the alleged basis of discrimination; (2) proximate in time to the adverse action; (3) made by an individual with authority over the housing decision; and (4) related to the housing decision at issue. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (discussing remarks as evidence in the context of a Title VII claim).

The plaintiffs assert that there is sufficient evidence to grant them judgment as a matter of law on their claim of intentional discrimination, because the defendants' refusal to modify the lease was an adverse housing decision and the defendants' remarks serve as direct evidence of their discriminatory intent. Doc. 41, att. 2, pp. 8–13. The defendants do not contest that either Bushnell is disabled within the meaning of the FHAA. They also do not appear to seek summary judgment on this claim, and instead focus their arguments on the reasonable accommodation claim. *See* doc. 27, att. 2; doc. 39. They do, however, assert that the Bushnells' request to have Gerald apply for and become a lessee of the apartment is premature. Doc. 27, att. 2. The court construes this as an argument that there was no underlying adverse housing decision.

For the purposes of proving an FHA/FHAA violation, "[a] defendant need not make it impossible for a person to occupy a dwelling to make housing unavailable." *Hunt v. Aimco*

*Properties, L.P.*, 814 F.3d 1213, 1223 (11th Cir. 2016). Instead, the Supreme Court has repeatedly instructed courts "to give the Fair Housing Act a 'broad and inclusive' interpretation" in light of its remedial policy. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1216 (11th Cir. 2008) (quoting *City of Edmonds v. Oxford House, Inc.*, 115 S.Ct. 1776 (1995)). Accordingly, an adverse, discriminatory housing decision may be found under § 3604(f) where the landlord imposes more burdensome procedures due to an applicant's disability or discourages his application. *Corey v. Sec., U.S. Dep't of Housing and Urban Dev. ex rel. Walker*, 719 F.3d 322, 327 (4th Cir. 2013).

In this matter, plaintiffs assert that defendants discouraged Dolores's request and imposed additional burdens on her son's application to become a co-lessee because of his disability. We treat the imposition of these additional burdens on the application process as an adverse decision under the FHAA, even if the Bushnells had no ultimate right to have Gerald added as co-lessee. Accordingly, we proceed to determine whether defendants' actions and remarks amount to sufficient evidence of animus.

Dolores declares the defendants first responded to Dolores's request to have Gerald become a co-lessee by asking if he would be able to pay rent on his own. Doc. 41, att. 8, p. 2. She states that she offered proof of Gerald's income to defendants Miller and Trosclair (respectively, the property manager and office manager), both of whom refused to review it.[7] *Id.* Thereafter, however, Dolores maintains that Trosclair advised her that Gerald could not be added as a co-lessee because of an assumption that he would not take his medications after his mother passed away. Doc. 41, att. 8, p. 2. Trosclair asserts that Gerald was only denied an application because

---

[7] Miller admits that she refused to review Gerald's financial information and cites privacy concerns based on the fact that Gerald was not present at the time. Doc. 39, att. 2, p. 23. Trosclair states that she does not recall this interaction. Doc. 39, att. 1, p. 22. She admits that she initially told Dolores that the lease could not be amended, but does not recall later telling her, as asserted, that Gerald could fill out an application or be added to the lease if he could prove his income. *Id.*

the apartment was already leased. Doc. 39, att. 1, pp. 22–23. Miller admits that Dolores Bushnell probably told her about Gerald being schizophrenic but denies discussing his medication needs. Doc. 39, att. 2, pp. 31–32.

Dolores asserts that her attorney then sent a letter to defendant Arnold Natali, the property owner/landlord, asking that Gerald be added to the lease, and that Natali responded that he would not make a decision until he could meet with Gerald. Doc. 41, att. 8, p. 3. This meeting took place in March 2017, with Natali coming to Dolores's apartment. *Id.* Afterwards, Natali stated that there was no way Gerald could live alone because he would not take care of himself or take his medication. *Id.* He told Dolores that he would not permit Gerald to be added to the lease and would not let him live in the apartment after Dolores passed away, although he would assist her in finding a group home for him.[8] *Id.*

In his deposition Natali recalls the March 2017 meeting and his impression that Gerald "[had] problems." Doc. 39, att. 3, pp. 94–95. He admitted that he was already aware that Gerald had a mental illness, though he had not received any complaints from tenants about him. *Id.* at 91–95. He also stated that he regarded Gerald staying with his mother as "free-loading." *Id.* at 93–94. He further asserted that Gerald's behavior "makes you think that he [has problems]" and that he does not "want to add him to the lease with no momma." *Id.* at 96–97. Finally, he recalls offering to assist the Bushnells in finding other housing for Gerald. *Id.* at 105–07.

Natali's remarks serve as direct evidence of animus, and he has also admitted that his decisions were guided by his perception of Gerald's mental illness.[9] Defendants only argue that

---

[8] In their statement of material facts, defendants deny that "Arnold Natali stated that Mr. Bushnell would not be added to the lease on the basis of his mental illness because he is not permitted to live there after his mother . . . dies." Doc. 41, att. 1, p. 2; doc. 46, p. 1. Defendants, however, point to nothing to refute that Natali made the statements as described above from Dolores's declaration, relating to his perceptions of Bushnell's ability to live alone and his offer to help Gerald find alternative housing after his mother died.
[9] A defendant may justify his discriminatory conduct by showing that making the dwelling available to that tenant "would constitute a direct threat to the health or safety of other individuals or . . . would result in substantial physical

the request was for an accommodation, and that it was an unreasonable one. They do not show, however, that Natali would have made the same determination or subjected the request to the same scrutiny if Gerald were not disabled. Accordingly, this assertion does not contradict plaintiffs' evidence, which is sufficient to show a violation of § 3604(f)(1)–(2).

Once a violation of the FHA/FHAA is established, the plaintiff is entitled to injunctive relief. *See, e.g.*, *Oxford House, Inc. v. Town of Babylon*, 819 F.Supp. 1179, 1182 (E.D.N.Y. 1993). Accordingly, the Bushnells are entitled to the relief sought here and the court need not consider the accommodation claim.[10]

## IV.
### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that defendants' Motion to Dismiss/Motion for Summary Judgment [doc. 27] be **DENIED** and that plaintiffs' Motion for Summary Judgment [doc. 41, att. 2] be **GRANTED IN PART**, as to the intentional discrimination claim and plaintiffs' entitlement to declaratory and injunctive relief, and **DENIED AS MOOT** as to the reasonable accommodation claim

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and

---

damage to the property of others." 42 U.S.C. § 3604(f)(9). Defendants do not raise this argument, however, and provide nothing outside of Natali's perceptions to support any assertion that allowing Gerald to become a co-lessee would endanger other tenants or their property.

[10] Plaintiffs assert in their complaint that they are entitled to costs and attorney fees under 42 U.S.C. § 3612(p). *See* doc. 1, p. 10. This statute, however, places the award of attorney fees at the court's discretion. The plaintiffs make no argument on this issue in their motion for summary judgment and the court lacks sufficient information to determine their entitlement to such an award at this time. Accordingly, in the event that the district court adopts this report and recommendation, plaintiffs will have **14 days** from that judgment to move for attorney fees and defendants will then have **7 days** to respond.

Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

    THUS DONE AND SIGNED in Chambers this 22nd day of May, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE